144 So. 501

## DUNN v. EICKE.
### No. 31066.

Oct. 31, 1932.

Richard Dowling and William R. Kinsella, both of New Orleans, for appellant.

Nicholas Callan, of New Orleans, for appellee.

O'NIELL, C. J.

The plaintiff has appealed from a judgment rejecting her demand for a decree of separation from bed and board. The suit is based upon allegations to the effect that, on three occasions, the plaintiff and defendant quarreled, and that, on these occasions, he treated her so cruelly that her living with him became intolerable.

The first quarrel occurred a year and nine months before the second, and the third occurred ten days after the second. The plaintiff avers that in the first quarrel the defendant attempted to choke her; that in the second quarrel, in the presence of a maidservant, he called her a damned fool; and that in the third quarrel he threw her on a sofa, shook his finger in her face, and demanded that she give him money. He, in his testimony, emphatically denied these charges, except the charge that, in the second quarrel, he used the epithet "damned fool." The plaintiff admitted, however, in her testimony, that her husband did not unqualifiedly call her a damned fool, on the occasion referred to, but, in declining to help her in a matter pertaining to the affairs of certain other people, he warned her that, if she persisted in what she was proposing to do, she might have to go upon the witness stand, and he said that she would be a damned fool to say things that she might have to swallow. That was not a polite manner of expression, but it was good advice. And we are not so sure that even the manner of expression would not pass muster in polite society these days. It was wrong, of course, for the defendant to put his wife on the spot, so to speak, by putting her in a situation where she had to either abandon her intention to help out those whom she desired to help out, or be, in her husband's estimation, a damned fool. But the idea which he had in mind was not a bad one; and the forceful way in which he tried to impress the good advice upon his wife was not unpardonable, particularly as there was no one else present but the hired girl. She, too, might have done well to take the advice against meddling in other people's business. Be all of which as it may, our opinion is that the husband's merely saying to his wife that she would be a damned fool if she did a certain thing, which it was entirely optional with her either to do or not to do, was not such cruel

treatment on his part as to justify a decree of separation from bed and board.

The other allegations of cruel treatment are not supported by a preponderance of the evidence. The plaintiff and the defendant contradicted each other in that respect; and the testimony of the witnesses called by the plaintiff to corroborate her testimony, her aunt and two servants, was very favorable to the defendant. The record shows that he has no bad habits and that his behavior has been consistently good, except when he told his wife that, if she said things, concerning certain other people's business, which she might have to swallow on the witness stand, she would be a damned fool.

The plaintiff's physician testified that she was suffering from a disorder of the nervous system, called neurasthenia, which had caused her to worry too much about small matters, but that she was much improved in that respect. It was, therefore, no fault of hers that the imperfections in her husband's conduct towards her were, in her view, magnified.

The judgment is affirmed.

ST. PAUL, J., takes no part.